Philip G. May, Esq. (AZ Bar No. 009764)
Devin Sreecharana, Esq. (AZ Bar No. 029057)
Andrew S. Lishko, Esq. (AZ Bar No. 033136)
**MAY, POTENZA, BARAN & GILLESPIE, P.C.**
201 N. Central Avenue, 22nd Floor
Phoenix, AZ 85004-0608
Telephone: (602)252-1900
Facsimile: (602)252-1114
Email: pmay@maypotenza.com
Email: devin@maypotenza.com
Email: alishko@maypotenza.com
*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bill Stokes, Donna Powers, and The Arizona Chapter of the Paralyzed Veterans of America, Inc., on behalf of themselves and a class of other similarly situated,<br><br>              Plaintiffs,<br><br>vs.<br><br>Total Transit, Inc. and Total Transit Enterprises, LLC (d/b/a Discount Cab),<br><br>              Defendants. | Case No.: CV-15-02363-PHX-DJH<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: COUNTERCLAIM**<br><br>(Honorable Diane J. Humetewa)<br><br>**(Oral Argument Requested)** |
| Total Transit Enterprises, LLC,<br><br>              Counterclaimant,<br><br>vs.<br><br>Bill Stokes, Donna Powers, and The Arizona Chapter of the Paralyzed Veterans of America, Inc., on behalf of themselves and a class of other similarly situated,<br><br>              Counterdefendants. | |

This is a discrimination case. Defendant/Counterclaimant Total Transit Enterprises, LLC, an Arizona limited liability company, d/b/a Discount Cab ("TTE") is a comprehensive mobility management company that provides private transportation (i.e., business-to-business and business-to-government accounts), public transportation (i.e., retail taxi service), and transportation management services. Defendant Total Transit Inc. ("TTI") is a holding company which TTE reports to. They are for-profit private businesses. TTE charges a $10.00

van fee to every TTE passenger (regardless of their mobility ability) who reserves a van (both accessible and non-accessible, and regardless of the van's use) for a scheduled pickup (the "On-Demand Van Fee"). _All_ passengers, with or without disabilities, who specifically request a van in advance of their trip are charged the same On-Demand Van Fee. Significantly, TTE does not retain the On-Demand Van Fee. TTE's independent contractor drivers keep the On-Demand Van Fee as an incentive to lease and drive vans.

TTE is not legally obligated to provide retail accessible taxi service to the public. It has historically elected to provide such service because it could do so within its business model and it believed doing so provided an important community service. TTE provides "on-demand" accessible transportation 24 hours/day. TTE offers the cheapest and most readily accessible on-demand accessible taxi service available in the communities it serves. It is the largest fleet provider of on-demand accessible transportation services in Arizona.

TTE's commitment to serving the disabled community through its retail accessible taxi service has been publically recognized for years. Indeed, Plaintiff Stokes noted Total Transit's superior vehicles and service, Plaintiff Powers testified that TTE drivers were well-trained and courteous, and a representative of Plaintiff The Arizona Chapter for the Paralyzed Veterans of America, Inc. ("AzPVA") stated that TTE provides a timely and responsible service.  Ironically, Plaintiffs[1] targeted TTE precisely because it has voluntarily elected to provide a valuable retail accessible taxi service, which is unparalleled in the marketplace.

Plaintiffs' claims arise under the Americans with Disabilities Act, codified as 42 U.S.C. § 12181, _et seq_. (the "ADA") and the Arizonans with Disabilities Act, codified as A.R.S. § 41-1492, _et seq_. (the "AzDA"). They initiated and perpetuated this lawsuit on the false premise that the On-Demand Van Fee, uniformly charged by TTE to _all_ customers who reserve a van for a scheduled trip, is discriminatory. While the named Plaintiffs do not regularly utilize TTE's retail services, they seek to represent a putative class through this

---

[1] "Plaintiffs" collectively refer to Plaintiffs Stokes, Powers, and the AzPVA, on behalf of themselves and a putative class of others similarly situated.

lawsuit. Plaintiffs seek a permanent injunction, which, as articulated in their Second Amended Complaint, requires TTE to continue its retail accessible van taxi service for at least the next five years. (Doc. 134) at 19-20.

TTE, through its First Amended Counterclaim (Doc. 135), seeks a declaration confirming that TTE is not legally obligated to provide retail accessible van taxi service to the general public and therefore could elect to terminate that service. *See* First Amend. Countercl. (Doc. 135) ¶¶ 13, 17, 21, and 25.  This is a threshold legal issue because TTE will permanently discontinue its retail accessible van taxi service once this Court confirms that the service is elective. Once TTE terminates that service, Plaintiffs' claims are moot.

To date, Plaintiffs have not cited to any federal or state law that compels TTE to provide or to continue to provide accessible van taxi service to the public. No such law exists.

Further, in their Answer to TTE's First Amended Counterclaim, Plaintiffs deny TTE's allegations that Plaintiffs contend that the law compels TTE to provide accessible van taxi service to the public. Plaintiffs then affirmatively allege that such allegations are a "misstatement" of Plaintiffs' position. *See e.g*., First Amend. Countercl. (Doc. 135) ¶¶ 11, 15, 19, and 23; Answer to First Amend. Countercl. (Doc. 137) ¶¶ 11, 15, 19, and 23. Plaintiffs' denial that they "contend that federal and/or state law compels TTE to provide accessible van taxi service to the public" confirms their agreement with TTE's position that federal and/or state law *does not* compel TTE to provide accessible van taxi service. *See* Answer to First Amend. Countercl. (Doc. 137) ¶ 11.

There are no disputed material facts concerning threshold legal issue provided in TTE's Counterclaim. Accordingly, TTE requests this Court enter summary judgment as to its Counterclaim by declaring its rights and responsibilities under federal and state law as follows:

1.  Neither federal nor state law compel TTE to provide accessible van taxi service to the public;

2.  Neither federal nor state law compel TTE to provide accessible van taxi service

to the public because it provides accessible transportation under private third-party contracts.

3. Neither federal nor state law compel TTE to provide van taxi service (accessible or non-accessible) to the public.

If this Court issues a declaration stating that TTE is not required under federal or state law to provide the foregoing services, TTE will immediately cease providing said services. Once TTE ceases to provide retail accessible van taxi service, Counts I–VI of Plaintiffs' Second Amended Complaint (Doc. 134) will be moot.

Accordingly, Defendants[2] request this Court consider and rule on this Motion prior to any other dispositive motion because if it grants this Motion, it will obviate the need for the parties and this Court to substantively address Plaintiffs' claims. If this Court denies this Motion, based upon the merits reflected in the briefing on Plaintiffs' Motion for Partial Summary Judgment (Doc. 148), Defendants' Response (Doc. 167), and Plaintiff's Reply (Doc. 186), this Court should nonetheless enter summary judgment in Defendants' favor. *See* Fed. R. Civ. P. 56(f) (empowering the Court with the discretion to grant summary judgment in favor of a nonmovant).

The following Memorandum of Points and Authorities, Defendants' Statement of Facts in support of Motions for Summary ("SOF ¶ _") filed herewith, and the record support this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   FACTUAL BACKGROUND

TTE is a for-profit private business, doing business as "Discount Cab." SOF ¶ 1. TTE uses independent contractor drivers to provide private transportation (i.e., business-to-business and business-to-government accounts), public transportation (i.e., retail taxi service), and transportation management services. SOF ¶ 2.

TTE's fleet is comprised of fuel and cost-efficient Toyota Prius hybrid vehicles, but also a number of non-accessible and accessible vans in its fleet. SOF ¶ 3. Independent

---

[2] "Defendants" collectively refers to TTE and Total Transit, Inc. ("TTI").

1    contractor drivers lease those vehicles from Discount Enterprises, Inc., a separate company.

2    SOF ¶ 4. Discount Enterprises, Inc. only purchases and TTE only operates (through its

3    independent contractor drivers) used vehicles, including vans. SOF ¶ 5.

4         With regard to TTE's retail taxi service, retail passengers can hire any vehicle, Prius

5    or van, by either hailing the vehicle on the street ("Street Hails") or by calling to reserve a

6    vehicle for a scheduled pickup ("On-Demand"). SOF ¶ 6.  Every retail passenger that orders

7    any TTE van On-Demand is charged the On-Demand Van Fee. SOF ¶ 7. TTE's On-Demand

8    Van Fee applies uniformly to all passengers utilizing TTE's On-Demand van taxi service,

9    regardless of the van's use or the passenger's mobility ability. SOF ¶ 8. There is no

10   discriminatory pricing. _All_ passengers, with or without mobility disabilities, who specifically

11   request a van in advance of their trip are charged the same On-Demand Van Fee. _Id._

12   Significantly, TTE does not retain the On-Demand Van Fee, the independent contractor

13   drivers keep the On-Demand Van Fee. SOF ¶ 9.

14        While TTE is not legally obligated to provide retail accessible van taxi service to the

15   public, it has historically elected to provide such service because it could do so within its

16   business model and it believed doing so provided an important community service. SOF ¶

17   10.

18        With regard to TTE's private transportation taxi service, TTE contracts with

19   corporations and state and local governments to provide non-accessible and accessible

20   transportation. SOF ¶ 11. In this regard, TTE's independent contractor drivers transport

21   Medicare and Medicaid beneficiaries to medical appointments, corporate-client passengers

22   to/from meetings, passengers eligible for paratransit services under private contracts with

23   local or regional transportation authorities. SOF ¶ 12. If accessible vans are required to

24   provide such private transportation, TTE's accessible van taxis are used. SOF ¶ 13. TTE

25   provides the vast majority of its accessible transportation services via its private business-to-

26   business and business-to-government account work. SOF ¶ 14.

27        Prior to this lawsuit's commencement, TTE advised Plaintiffs, through their counsel,

28   in writing that: 1) TTE was not legally obligated to provide accessible van taxi service to the

5

public; and, 2) if Plaintiffs filed a lawsuit against TTE attempting to force TTE to discontinue its On-Demand Van Fee for passengers requesting accessible van taxi service in disruption of its business model, TTE would be forced to consider discontinuing such service. SOF ¶¶ 17–18.

Through this lawsuit, Plaintiffs initially brought retaliation and coercion claims based on TTE's position that it is not legally required to provide accessible van taxi service and, in its discretion, could cease providing such service at any time. Pls.' Compl. Compl. (Doc. 1); Amend. Compl. (Doc. 25). When questioned during deposition about whether, prior to this lawsuit's commencement, their counsel had provided to them TTE's pre-litigation written correspondence noting that TTE's retail accessible van taxi service was elective, each deponent/Plaintiff answered "no." SOF ¶ 19. When questioned during deposition about whether (s)he had seen or approved the specific allegations in their Complaint and Amended Complaint prior to filing those pleadings, each deponent/Plaintiff answered "no." SOF ¶ 20. They did not review the entirety of their Complaint and Amended Complaint until well after they had been filed.[3] In fact, when questioned during her deposition about whether, prior to litigation, she felt coerced, intimidated or threatened, Plaintiff Powers stated "no." SOF ¶ 22.

Plaintiffs ultimately withdrew their retaliation claim, *see* Pls.' Amend. Compl (Doc. 25.), and, after a year-and-a-half of litigation, their coercion claim. *See* Pls. Second Amend. Compl. (Doc. 134). Plaintiffs' retaliation and coercion claims were frivolous.

Although the Plaintiffs' withdrew those claims against TTE, Plaintiffs' threatening posture and tactics, the likelihood that they would re-assert retaliation and coercion claims against TTE in the future, their demand for payment of fees and costs, their use of press releases to attack TTE, and the possibility of subsequent related lawsuits by additional individuals or organizational entities have led TTE to determine that before terminating its retail accessible van taxi service, it should secure a formal declaration from this Court

---

[3] Because Plaintiffs' depositions occurred before the filing of their Second Amended Complaint, it is unknown whether they reviewed the entirety of their Second Amended Complaint and the allegations therein.

confirming that TTE is/was not compelled by law to provide that accessible van taxi service to the public, and that TTE could therefore legally discontinue the service. SOF ¶¶ 23–24.

Under the circumstances created by Plaintiffs' initiation and pursuit of this Litigation, TTE has regrettably determined that TTE's business interests are best served by discontinuing its accessible van service to the public. SOF ¶ 25. This determination is based on TTE's desire to avoid the monetary and nonmonetary costs of defending its pricing policy of charging all of its passengers the same rates for the identical taxi service, in this and potential future litigation. *Id.* TTE will immediately and permanently discontinue its accessible van service to the public upon the confirmation by the Court that it may lawfully do so. SOF ¶ 26.

## II.    LEGAL ARGUMENT

Under the Declaratory Judgment Act, 28 U.S.C.A. § 2201, and the Uniform Declaratory Judgments Act, as adopted by the State of Arizona, A.R.S. 12-1831 *et seq*., this Court may declare the rights and other legal relations of any interested party in a case of actual controversy. "The 'actual controversy' requirement of the [Declaratory Judgment] Act is the same as the 'case or controversy' requirement of Article III of the United States Constitution. The party seeking the declaration bears the burden of establishing justiciability." *Nat'l Union Fire Ins. Co. of Pittsburg, PA v. ESI Ergonomic Sols., LLC*, 342 F. Supp. 2d 853, 862 (D. Ariz. 2004) (internal citations and quotations omitted).

"The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree." *Id*. (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. "If the defendant's actions cause the plaintiff to have a 'real and reasonable apprehension that he will be subject to liability,' the plaintiff has presented a justiciable case or controversy." *Id*. (quoting *Spokane Indian Tribe v. United States*, 972 F.2d 1090 (9th Cir. 1992)). "It is

7

immaterial that frequently, in the declaratory judgment suit, the positions of the parties in the conventional suit are reversed." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

For a declaratory judgment to be proper, and not an advisory opinion, it must settle some dispute "which affects the behavior of the defendant towards the plaintiff." *Hewitt v. Helms*, 482 U.S. 755, 761, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987).

An actual and justiciable controversy exists between TTE and Plaintiffs regarding whether TTE may cease providing retail accessible van taxi service and/or van taxi service.[4] From the beginning of their communications with TTE and throughout this litigation, Plaintiffs have consistently maintained the position that TTE may not terminate its retail accessible van taxi service. *See, e.g.*, Pls.' Amend. Compl. (Doc. 25) ¶ 95 ("Moreover, if Defendants cease dispatch taxi service for vans as they have threatened to do, they will have engaged in retaliation against Plaintiffs and the Plaintiff class."). Indeed, they initially brought claims against TTE for retaliation and coercion claims (now withdrawn), and pursued their remaining claims and requested relief purportedly on the premise that TTE must continue to provide retail accessible van taxi service. Plaintiffs have not provided any legal authority to support their position. However, their threatening posture and tactics, the likelihood that they would re-assert retaliation and coercion claims against TTE, their demand for payment of fees and costs, their use of press releases to attack TTE, and the possibility of subsequent related lawsuits by additional individuals or organizational entities have given TTE a real and reasonable apprehension that discontinuing its On-Demand Van Service without first securing this Court's declaration of its rights could leave it subject to liability. SOF ¶ 23.

The Court's declaratory judgment that TTE is not legally obligated to provide retail

---

[4] If, as it appears from the denials in Plaintiffs' Answer to First Amend. Countercl. (Doc. 137) ¶¶ 11, 15, 19, and 23 that Plaintiffs actually *agree* with TTE's position (that federal and/or state law *does not* compel TTE to provide accessible van taxi service), then it is unclear why Plaintiffs have not overtly conceded those points prior to or early on in this lawsuit, or stipulated to the declaration TTE is seeking. The only remaining issue would be an inquiry as to why Plaintiffs initiated and perpetuated this lawsuit notwithstanding undisputed law and TTE's willingness to cease providing accessible van taxi service.

accessible van taxi service to the public and that TTE may, in its discretion, cease such service will allow TTE to terminate its retail accessible van taxi service and bring an end to this vexatious litigation (and potentially others).

Accordingly, because there is an actual and justiciable controversy between TTE and Plaintiffs, this Court should issue a declaratory judgment declaring that TTE is not obligated to continue to provide accessible van taxi service to the public, regardless of whether it continues to provide non-accessible van taxi service to the public and whether it provides accessible private transportation pursuant to third-party contracts.

## A. TTE is not legally obligated to provide accessible van taxi service to the public.

Neither the ADA nor the AzDA compels TTE to provide accessible van taxi service to the public, let alone own or lease accessible vans.[5] It necessarily follows that TTE is not obligated to continue to provide accessible van taxi service to the public when such service is not and was never compelled by law.

The Code of Federal Regulations ("CFR") provides clear direction for taxi service providers: "Providers of taxi service are *not* required to purchase or lease accessible automobiles . . . . A provider of taxi service is not required to purchase vehicles other than automobiles in order to have a number of accessible vehicles in its fleet." 49 C.F.R. § 37.29(b) (emphasis added); *see also Noel v. New York City Taxi and Limousine Com'n*, 687 F.3d 63, 73 (2d Cir. 2012) ("Plaintiffs do not – and cannot – bring such a claim against the taxi industry under Title III of the ADA (which governs private entities), because Title III exempts taxi providers from purchasing or leasing accessible automobiles.")

Under the ADA, AzDA, and applicable regulations, automobiles, such as TTE's Toyota Priuses, do not have to be accessible. *See* 42 U.S.C. § 12184(b)(3) (noting that new vehicles must be accessible, but new vehicles do not include "an automobile, a van with a

---

[5] The AzDA "is intended to be consistent with the ADA." *See Freemyer v. Kyrene Village II, LLC*, 2011 WL 42681 *6 (D. Ariz. January 6, 2011). Compliance with Title III of the ADA and its regulations "shall be deemed" compliance with the AzDA. A.R.S. § 41-1492.06(B). Accordingly, TTE primarily cites to the ADA and applicable case law. To the extent there are any distinctions between the two statutory schemes, they are noted.

seating capacity of less than 8 passengers, including the driver, or an over-the-road bus") *accord* A.R.S. § 41-1492.05(3); *see also* 49 C.F.R. § 37.29(b) ("Providers of taxi service are not required to purchase or lease accessible automobiles."). A "new" vehicle refers to vehicles "offered for sale or lease after manufacture without any prior use."[6] 49 C.F.R. § 37.3; *Toomer v. City Cab*, 443 F.3d 1191, 1193 (10th Cir. 2006) (noting that "the ADA does not require *all* accommodation at *any* cost for all disabilities" and holding the DOT's definition of "new vehicle" as used for ADA compliance purposes is afforded *Chevron* deference) (emphasis in original).

Under the plain language of the ADA and AzDA, and as emphasized by the Tenth Circuit in *Toomer*, 443 F.3d at 1193, only new vans must be accessible. It is undisputed that TTE only purchases used vans. SOF ¶ 5. Because neither the ADA nor AzDA require TTE to purchase, lease, or operate accessible vehicles and do not require TTE's used vans to be accessible, it necessarily follows that neither the ADA nor AzDA require TTE to provide retail accessible van taxi service to the public. Accordingly, TTE can cease providing retail accessible van taxi service to the public without violating the ADA or AzDA. TTE can also continue to provide retail non-accessible van taxi service to the public.

This Court should declare that neither federal nor state law compel TTE to provide accessible van service, and that TTE may, in the exercise of its business judgment, may cease providing retail accessible van taxi service. TTE's election to cease providing accessible van service has no impact on TTE's right to continue providing retail non-accessible van taxi service.

**B. TTE's right to terminate its retail accessible van taxi service is unaffected by the fact it provides accessible van service under private third-party contracts.**

The ADA classifies entities as either "public" or "private." *See* 42 U.S.C § 12181(6). Public entities generally refers to state and local governments, or the departments and agencies of said governments. 42 U.S.C § 12131(1). A private entity is any non-public entity.

---

[6] Because TTE does not purchase new vehicles, 42 U.S.C. § 12184(b)(3), which provides requirements for taxi companies which purchase new vehicles, has no application.

42 U.S.C § 12181(6). The ADA treats public and private entities differently. *Compare* 42 U.S.C § 12182 *with* 42 U.S.C § 12184. Private entities are further segregated into those which are "primarily engaged in the business of transporting people" (a "Private Transportation Entity") and those "not primarily engaged in the business of transporting people" (a "Private Non-Transportation Entity"). *Compare* 49 C.F.R §37.101 *with* 49 C.F.R §37.103. TTE is a Private Transportation Entity.

Whether an entity is classified as a public entity, a Private Transportation Entity, or a Private Non-Transportation Entity affects its obligations under the ADA and applicable Department of Transportation ("DOT") Regulations.

The DOT Regulations are instructive where, as here, third-parties contract with a Private Transportation Entity to provide transportation services.  Under 49 C.F.R § 37.23(d) "[a] private entity that provides fixed route or demand responsive transportation service under contract or other arrangement with another private entity shall be governed, for purposes of the transportation service involved, by the provisions of this part applicable to the other entity."

Appendix D to Part 37 (the "Commentaries"), which is the "definitive guidance concerning the meaning and implementation of [49 C.F.R § 37]," offers further understanding to the ADA's application to this contractual arrangement. *See* Appendix D to Part 37, *available at* https://www.transit.dot.gov/regulations-and-guidance/civil-rights-ada/part-37-transportation-services-individuals-disabilities#sec.37.7.  When an entity contracts with another for the provision of transportation services, the company providing the transportation services "stands in the shoes" of the contracted-with company for purposes of assessing whether the company providing the transportation complies with the ADA. Thus, a Private Transportation Entity will be held to the ADA standards applied to a public entity *if* the Private Transportation Entity is contracted to provide transportation services for the public entity. Importantly, however, the "stand in the shoes" requirement is only applicable to the vehicles and services provided for under the specific contract or "in contemplation for use" for the specific contract. *See* Commentaries at 465–66. Significantly, the standards *do*

_not_ apply to _all_ vehicles and extra-contractual services offered by the Private Transportation Entity. For example,

> a private bus company, if purchasing buses for service under contract to a public entity, must purchase accessible buses. The same company, to the extent permitted by the private entity provisions of this part, may purchase inaccessible vehicles for its tour bus operations.

Commentaries at 466. The same analysis applies when a Private Transportation Entity contracts with a Private Non-Transportation Entity:

> For example, a taxi company [a Private Transportation Entity] contracts with a hotel to provide airport shuttle van service. With respect to that service, the taxi company would be subject to the requirements for [Private Non-Transportation Entities] since it would be "standing in the shoes" of the hotel for that purpose.

Commentaries at 466.

The "stand in the shoes" analysis applies here. The law applicable to TTE's retail accessible van taxi service is separate and distinct from the accessible van transportation service related to TTE's private contracts. TTE provides transportation services under contract with public and private entities. SOF ¶¶ 2 and 11–14. In connection with its contract services for public entities, TTE must comply with the law and regulations applicable to public entities. Those obligations have _no_ bearing on TTE's legal obligations relating to its retail transportation services to the public. Plaintiffs' have conflated this analysis. Pls.' Second Amend. Compl. (Doc. 134) ¶¶ 19-21, 28, 83 and 101.

Accordingly, TTE's provision of accessible transportation services under its private third-party contracts has no legal bearing upon whether its right to elect to continue or discontinue providing accessible transportation to the public. Neither the ADA nor AzDA provides otherwise. This Court should issue a declaration confirming the same.

### C. **When TTE ceases to provide retail accessible van taxi service, Plaintiffs' claims will be moot.**

"A case is moot if the issues presented are no longer live and there fails to be a case or controversy under Article III of the Constitution." _E.E.O.C. v. Federal Exp. Corp._, 558 F.3d 842, 846 (9th Cir. 2009) (citation omitted). The test for mootness is whether the court can grant the plaintiff any effective relief on the merits in plaintiff's favor. _Id._ at 846–47. If the

court finds the plaintiffs' ADA claims to be moot, dismissal of the federal claims removes jurisdiction over the state law claims. *See Brooke v. Elite Hospitality, LLC*, 2016 WL 3213223 *5 (D. Ariz. June 10, 2016) (citing *Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1025 (9th Cir. 2007).

If this Court grants this Motion, TTE will cease to provide retail accessible van taxi service and the On-Demand Van Fee associated with that service will necessarily cease to exist. If there is no retail accessible van taxi service or related fee, there will be no basis for Plaintiffs' claims or the injunctive relief they seek.

**D.   TTE requests an opportunity to apply for an award of its fees and costs.**

The ADA allows a "prevailing party" its fees. 42 U.S.C. § 12205. "[F]ees should be granted to a defendant in a civil rights action only upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Summers v. A. Teichert & Son,* 127 F.3d 1150, 1154 (9th Cir. 1997) (internal quotation marks omitted). Further, this Court retains its "inherent power" to award attorneys' fees as a sanction, even in ADA cases. *See Glass v. Intel Corp., Inc.*, 2009 WL 4050875 *1 (D. Ariz. Nov. 20, 2009).

There is *no* law supporting Plaintiffs' requested relief.  Despite TTE's pre-litigation notice to Plaintiffs regarding its rights to elect to provide or to cease to provide retail accessible van taxi service, Plaintiffs' filed and have perpetuated this action. If Plaintiffs' claims were not clearly unjustified at the inception of this lawsuit, they certainly were exposed through discovery, which confirmed materially false allegations in Plaintiffs' Complaint and First Amended Complaint. The assertion and then withdrawal of their retaliation and coercion claims, which were frivolous, further expose Plaintiffs' haphazard approach to this case. Those claims compelled TTE to seek a legal declaration of its rights to terminate its elective service and to continue defending claims that would otherwise have been declared moot once it ceased that service. TTE has borne the burden of Plaintiffs' actions in and outside of this lawsuit and incurred significant costs to defend its elective, nondiscriminatory, and beneficial retail accessible van taxi service. If this Motion is granted, TTE requests the opportunity to apply for its fees.

**E. TTE requests this Court make findings of undisputed facts under Fed. R. Civ. P. 56(g).**

If this Court determines that summary judgment is improper, TTE requests it issue an order setting forth material facts that are undisputed so that they may be deemed established in this matter going forward. *See* Fed. R. Civ. P. 56(g).

## III.   CONCLUSION

Based on the foregoing, TTE respectfully requests this Court declare as follows:

A.   Neither federal nor state law compel TTE to provide accessible van taxi service to the public;

B.   Neither federal nor state law compel TTE to provide accessible van taxi service to the public just because it provides accessible transportation under private third-party contracts.

C.   Neither federal nor state law compel TTE to provide van taxi service (accessible or non-accessible) to the public.

TTE also requests the opportunity to apply for its fees and costs if it prevails on this motion.

RESPECTFULLY SUBMITTED this 29th day of June, 2018.

MAY, POTENZA, BARAN & GILLESPIE, P.C.

/s/ *Philip G. May*
Philip G. May, Esq.
Devin Sreecharana, Esq.
Andrew S. Lishko, Esq.
*Attorneys for Defendant*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2018, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

> Jessica Jansepar Ross
> Rose Daly-Rooney
> ARIZONA CENTER FOR DISABILITY LAW
> 177 North Church Avenue, Suite 800
> Tucson, AZ  85701
>
> Thomas Zito
> Michelle Iorio
> Sean Betouliere
> DISABILITY RIGHTS ADVOCATES
> 2001 Center Street, 4th Floor
> Berkeley, CA  94704
> *Attorneys for Plaintiffs*

/s/*Renee Gonzales*